265 TREMONT STREET, INC. *vs.* JOSEPH M. HAMILBURG & another.

Suffolk.   January 8, 1947. — June 3, 1947.

Present: FIELD, C.J., LUMMUS, RONAN, WILKINS, & SPALDING, JJ.

*Unlawful Interference.  Unfair Competition.  Landlord and Tenant,* What premises let, Sign.  *Laches.  Estoppel.  Equity Jurisdiction,* Laches.

A corporation conducting a theatre under the name "Shubert Theatre" was not entitled to an injunction against use of the name Shubert in connection with a jewelry and loan business carried on near the theatre, where on the findings there was no likelihood of confusion of identity between the two enterprises or of deception of the public.

A lease of the second floor of a business building included the outside wall adjacent to that floor in the absence of anything in the lease to the contrary, and the lessee was entitled to have a lessee of the first floor enjoined from maintaining on the outside wall a sign which projected fifteen inches above the floor level of the second floor; the facts, that the lessor in the lease of the second floor reserved a right of access to the roof and space for pipes, wires and the like, that the lessee of the second floor had no use for the outside wall, and that his lease contained a further provision against his maintaining a sign without the lessor's consent, were immaterial.

Failure of a lessee of the second floor of a business building to object to the maintenance of certain signs by various tenants of the first floor did not constitute laches or estoppel precluding him from obtaining in a suit in equity relief against the maintenance of other signs by a later tenant of the first floor, which he promptly objected to and sought to enjoin by commencing the suit.

BILL IN EQUITY, filed in the Superior Court on October 5, 1945.

The suit was heard by *Pinanski,* J.

*M. E. Gallagher, Jr.,* (*W. P. Everts* with him,) for the plaintiff.

*B. R. Slobodkin,* (*H. M. Pakulski* with him,) for the defendant Hamilburg.

*H. H. Rudofsky & S. Andelman,* for the defendant Zinn, submitted a brief.

WILKINS, J.  The plaintiff owns and operates the "Shubert Theatre" at 265 Tremont Street, Boston.  The defendant Zinn under the name of "Shubert Jewelry Co." conducts a jewelry, and, to a small extent, a money lending, business at 253 Tremont Street in a store on the first floor of a two-story building at 253–261 Tremont Street owned by the defendant Hamilburg.  The plaintiff is also the lessee of the entire second floor of Hamilburg's building.  By this bill in equity the plaintiff seeks to enjoin Zinn from displaying a sign containing the name "Shubert" on or above the premises occupied by Zinn; to enjoin Zinn from displaying in his store windows in connection with articles advertised for sale the words "Shubert Guarantee"; to enjoin Hamilburg from allowing Zinn or anyone to erect any sign on the outside wall of the second floor of the building; and to enjoin Zinn from erecting any sign on the outside wall of the second floor.  The judge, after hearing, filed "findings and order for decree," and pursuant thereto a final decree was entered dismissing the bill.  The plaintiff appealed.  The evidence is reported.

The plaintiff was incorporated in this Commonwealth in 1909 as the "Shubert Holding Company," and has since owned and operated the "Shubert Theatre."  In 1942 its name was changed to "265 Tremont Street, Inc."  Its capital stock is owned by two brothers, Lee and Jacob J. Shubert of New York, who, with a third individual, comprise the board of directors.  The Shubert brothers for about forty years "have been leading owners of legitimate theatrical properties and leading theatrical producers of the country," with theatres in Boston, New York, Philadelphia, Chicago, and other cities.  Their name appears in a large marquee sign in front of the theatre at 265 Tremont Street and in a still larger one above the theatre.  They own and operate six theatres in Boston, and in 1945 spent over $200,000 in the Boston area in all types of advertising of

the name "Shubert" in connection with theatrical productions. The plaintiff and the Shubert brothers have no business interests in and around Boston other than the theatre business and their real estate holdings incident thereto.

The "Shubert Jewelry Co." was established in 1941 by one William N. Shoostine, at 229 Tremont Street in the theatrical district, near the Majestic Theatre, another "Shubert" theatre. In 1943 Shoostine transferred the business to one Jacob Shubert (not the Jacob J. Shubert connected with the plaintiff) and one Morningstar. In January, 1944, they in turn transferred to Zinn the business, including the right to use the name "Shubert Jewelry Co." which had been continuously used since August, 1941. That name at that time was prominently displayed on two signs on the store premises at 229 Tremont Street, which were in a building owned "by the Shubert interests (Jacob J. Shubert and Lee Shubert)." Zinn continued to display merchandise with the same price tags as had been used by his predecessors, the tags containing the words "Shubert" and "guaranteed." Failing to secure a new lease because of a dispute over the removal of the name "Shubert" from the signs, Zinn moved the jewelry business to its present location at 253 Tremont Street. Hamilburg's leases to the plaintiff and to Zinn are respectively dated May 1, 1944, and September 1, 1944. Zinn with the permission of Hamilburg erected "belt" signs on the premises at 253 Tremont Street, one on the Tremont Street side reading "Shubert Jewelry Co. Diamonds — Watches," and one on the alley side reading "Loans Diamonds — Watches and Jewelry."

The judge's "findings and order for decree" contained the following: "The plaintiff and the defendant Zinn are not in fact rivals for the trade which the defendant Zinn secures. The name Shubert Jewelry Co. used by the defendant Zinn has not misled and is not likely to mislead those with whom the parties deal and among whom they look to for business. The defendant Zinn has never attempted to pass off his goods as the plaintiff's or to deceive the public. The defendant Zinn has never attempted to pass himself off as the plaintiff or to pass off his goods as the plaintiff's goods.

The defendant Zinn has never misled or deceived the public into the belief that his business is conducted under auspices of the plaintiff, and the public has not been and is not likely to be misled or deceived. No confusion of identity between the plaintiff's theatre and the defendant Zinn's business has arisen and no fraud, deceit, or unfair competition on the part of the defendant Zinn has been shown by the plaintiff. The plaintiff and the defendant Zinn are not engaged in competitive enterprise. The burden is upon the plaintiff to show that the defendant Zinn is conducting business in such a manner as to mislead the public into believing that in trading with him they are doing business with the plaintiff. Although actual deception of the public need not be shown, the plaintiff must prove that the conduct of the defendant Zinn is such that it is reasonably probable that such deception will result unless the defendant is restrained. . . . There was no competition between the plaintiff and the defendant Zinn."

The fact that the parties do not solicit the same trade from the same customers in the same territory at the same time is an end of the matter, according to the contentions of Zinn, and he relies upon such cases as *Carney Hospital* v. *McDonald*, 227 Mass. 231, *Hub Dress Manuf. Co.* v. *Rottenberg*, 237 Mass. 281, *Loew's Boston Theatres Co.* v. *Lowe*, 248 Mass. 456, and *John L. Whiting-J. J. Adams Co.* v. *Adams-White Brush Co.* 260 Mass. 137. On the other hand, the plaintiff argues that the trend of judicial decisions is away from denying remedy for an unauthorized use of a trade name merely because actual competition is lacking. It cannot be gainsaid that that is true. There is a large and growing body of authority to that effect. [1]

---

[1] *Aunt Jemima Mills Co.* v. *Rigney & Co.* 247 Fed. 407 (C. C. A. 2). *Akron-Overland Tire Co.* v. *Willys-Overland Co.* 273 Fed. 674 (C. C. A. 3). *Anheuser-Busch, Inc.* v. *Budweiser Malt Products Corp.* 295 Fed. 306 (C. C. A. 2). *Vogue Co.* v. *Thompson-Hudson Co.* 300 Fed. 509 (C. C. A. 6). *Wall* v. *Rolls-Royce of America, Inc.* 4 Fed. (2d) 333 (C. C. A. 3). *Vogue Co.* v. *Vogue Hat Co.* 12 Fed. (2d) 991 (C. C. A. 6). *Yale Electric Corp.* v. *Robertson*, 26 Fed. (2d) 972 (C. C. A. 2). *L. E. Waterman Co.* v. *Gordon*, 72 Fed. (2d) 272 (C. C. A. 2). *Adolph Kastor & Bros. Inc.* v. *Federal Trade Commission*, 138 Fed. (2d) 824 (C. C. A. 2). *Dwinell-Wright Co.* v. *National Fruit Product Co. Inc.* 140 Fed. (2d) 618 (C. C. A. 1). *Lady Esther, Ltd.* v. *Lady Esther Corset Shoppe, Inc.* 317 Ill. App. 451. *Walter* v. *Ashton*, [1902] 2 Ch. 282. See Restatement:

The judge in his "findings and order for decree" said, "I am aware of the case of *Tiffany & Co.* v. *Tiffany Productions, Inc.* 147 Misc. (N. Y.) 679, affirmed 237 App. Div. (N. Y.) 801, affirmed 262 N. Y. 482, and the Federal authorities which it is claimed decide that 'use of another's name will be enjoined, irrespective of whether there is actual competition between parties,' but I do not believe that it is the law of this Commonwealth." Whether that statement is correct, we need not decide. After its effective date, G. L. (Ter. Ed.) c. 110, § 7A, as inserted by St. 1947, c. 307, [1] will govern this matter. We now have no occasion for abstract discussion of academic principles. The present case does not render that course necessary. The plaintiff has not brought itself within the rule of law for which it contends. There is nothing about the "Shubert Jewelry Co." shop or the conduct of its business which would lead the public reasonably to believe that it was owned, operated, or sponsored by the plaintiff or by the "Shubert Theatre." At least the judge was not plainly wrong in not so finding. On the findings a person of ordinary intelligence would not think the theatre owners were the owners or operators of this jewelry and money lending business. No likelihood of deception appearing, the plaintiff cannot prevail in this aspect of the case even though the absence of competition be treated as no objection. *Yale Electric Corp.* v. *Robertson,* 26 Fed. (2d) 972, 974 (C. C. A. 2). *L. E. Waterman Co.* v. *Gordon,* 72 Fed. (2d) 272, 273 (C. C. A. 2). *Certain-Teed Products Corp.* v. *Philadelphia & Suburban Mortgage Guarantee Co.* 49 Fed. (2d) 114, 115 (C. C. A. 3). *Yale & Towne Manuf. Co.* v. *Rose,* 120 Conn. 373, 377–378. Restatement: Torts, § 730, comment b; § 731. 148 Am. L. R.

Torts, § 730; Derenberg, Trade-Mark Protection & Unfair Trading, § 36; Nims, Law of Unfair Competition & Trade-Marks (3d ed.) § 374; 38 Harv. L. Rev. 370; 40 Harv. L. Rev. 813, 824; 75 U. of Pa. L. Rev. 197, 206; 148 Am. L. R. 12; 52 Am. Jur., Trademarks, Tradenames, & Trade Practices, § 97.

[1] This statute was approved May 2, 1947, and reads: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a trade name or trade-mark shall be a ground for injunctive relief in cases of trade-mark infringement or unfair competition notwithstanding the absence of competition between the parties or of confusion as to the source of goods or services."

63–64, 89.    52 Am. Jur., Trademarks, Tradenames, & Trade Practices, § 99.    See *Norton* v. *Chioda*, 317 Mass. 446, 451; *Silbert* v. *Kerstein*, 318 Mass. 476, 479.

We pass to the question of encroachment. Hamilburg's lease to the plaintiff provides: "the lessor does hereby demise and lease unto the lessee the entire second floor of the building . . . together with the entrance and stairway thereto leading from . . . Tremont Street, except space for pipes, ducts, air shafts, wires, meters and appurtenant fixtures serving other parts of the building of which the demised premises form a part and reserving unto the lessor the right to go over and upon said entrance and stairway for the purpose of access to the roof of the . . . building. . . . the lessee . . . will not permit any hole to be drilled or made in the stone or brickwork of the said building or any placard or sign to be placed upon the building, except such and in such place and manner as shall have been first approved in writing by the lessor."

We state additional facts found by the judge or by ourselves. *Lowell Bar Association* v. *Loeb*, 315 Mass. 176, 178. At the time of the execution of the plaintiff's lease the tenant in the store at 253 Tremont Street was a florist, who had a sign on the front of the building in approximately the same position as one of the signs now maintained by Zinn. The tenant occupying the store premises adjoining 253 Tremont Street, a café proprietor, had erected signs which extended not only above the floor level but above the sill level of the second floor. The plaintiff never objected to the maintenance of signs by tenants other than Zinn. On the roof there was, and had been for about twenty years, an outdoor advertising sign in a location "leased" by Hamilburg to an advertising company.[1] On September 21, 1944, shortly after the commencement of Zinn's lease, Hamilburg authorized Zinn to place "a belt sign above the windows of your store flat against the building." Zinn then erected a sign which did not project above the floor level of the second floor. About a year later, after the sign had been blown

---

[1] See *Alfano* v. *Donnelly*, 285 Mass. 554, 557; *Baseball Publishing Co.* v. *Bruton*, 302 Mass. 54.

down in a wind storm, Zinn caused to be erected the two "belt" signs now in controversy, each of which is flat against the building but extends fifteen inches above the floor level of the second floor. On both occasions the plaintiff objected to the erection of Zinn's signs. In fact, the installation of those now in question was completed after the filing of the bill of complaint.

In his "findings and order for decree" the judge said, "I do not find that there is any encroachment by the defendant Hamilburg on the part of the outside wall appurtenant to and adjacent to the premises demised to the plaintiff by the defendant Hamilburg; nor do I find any encroachment by the defendant Zinn."

In the absence of anything in the lease to the contrary the lessee of the second floor would have the control of, and the right to use, the outer walls adjacent thereto. *Lowell* v. *Strahan*, 145 Mass. 1, 8–9. *Leominster Fuel Co.* v. *Scanlon*, 243 Mass. 126, 127. *Anderson* v. *Kopelman*, 279 Mass. 140, 145–146. *Levin* v. *Rose*, 302 Mass. 378, 380. *Shepard* v. *Worcester County Institution for Savings*, 304 Mass. 220, 221–222. *Hannon* v. *Schwartz*, 304 Mass. 468, 470. *Blanchard* v. *Stone's Inc.* 304 Mass. 634, 640. *Broads* v. *Mead*, 159 Cal. 765, 767. *Snyder* v. *Kulesh*, 163 Iowa, 748, 750–751. *Forbes* v. *Gorman*, 159 Mich. 291, 294–295. *Riddle* v. *Littlefield*, 53 N. H. 503. *Rayhertz Amusement Corp.* v. *Fulton Improvement Co.* 124 N. J. Eq. 121, 123. *Hope Brothers, Ltd.* v. *Cowan*, [1913] 2 Ch. 312, 316–317. Jones, Landlord & Tenant, § 108. 22 Am. L. R. 800. 32 Am. Jur., Landlord & Tenant, §§ 195, 210. The dividing line would be at the floor level. *Hilburn* v. *Huntsman*, 187 Ky. 701, 703. See *Booth* v. *Gaither*, 58 Ill. App. 263, 265. The case of *Pevey* v. *Skinner*, 116 Mass. 129, related to the lease of a room and not of a floor, as was fully pointed out in *Lowell* v. *Strahan*, 145 Mass. 1, 11. See *Raynes* v. *Stevens*, 219 Mass. 556, 557.

We are of opinion that there are no factors taking the present case out of the usual rule. It is of no consequence that Hamilburg reserved the right of access to the roof, or that there is no evidence that the plaintiff has any use for the outside walls. The provision precluding the placing of

a sign by the plaintiff without Hamilburg's consent is, to be sure, for the benefit of the lessor. *Levin* v. *Rose*, 302 Mass. 378, 380–381. But it is for his protection against the type of sign which might be placed by the lessee. It did not amount to a reservation excepting the walls from the scope of the lease, nor did it restrict the lessee's rights to exclude the signs of others. *Stahl & Jaeger* v. *Satenstein*, 233 N. Y. 196, 198. It is urged, however, that the presence of signs on the building at the time of the execution of the plaintiff's lease and the plaintiff's failure to object to them not only permitted, but required, the judge to find that there was no encroachment. We cannot regard these as material considerations. We are concerned only with two signs caused to be erected by Zinn. When it became apparent that these signs were to be placed over the store, the plaintiff immediately objected, and, as soon as it appeared that its protests were ineffectual, it brought this suit before the signs were finally put into place. While it is true that the plaintiff objected primarily to the use of the name "Shubert," that does not deprive it of its rights under the lease. On these facts, there was an encroachment by Zinn's signs on the premises of the plaintiff, which was neither guilty of laches nor estopped to object.

It follows that the final decree is reversed, and a new final decree is to be entered, with costs, enjoining the defendant Zinn from erecting or maintaining, and the defendant Hamilburg from permitting the defendant Zinn to erect or maintain, any sign which, during the term of the plaintiff's lease, projects above the floor level of the second floor of the premises at 253–261 Tremont Street.

*So ordered.*