**PPG INDUSTRIES, INC. Plaintiff,**

**v.**

**CLINICAL DATA INC. Defendant.**

**Civ. A. No. 79–1300–N.**

United States District Court,
D. Massachusetts.

Oct. 28, 1985.

Herbert P. Kenway, Kenway & Jenney, Boston, Mass., for plaintiff.

Blair L. Perry, Hale & Dorr, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

DAVID S. NELSON, District Judge.

This is a trademark dilution action brought under the Massachusetts Anti-Dilution Statute, M.G.L. c. 110B, § 12. Jurisdiction is pursuant to 28 U.S.C. § 1332(a). Plaintiff, a Pennsylvania corporation, manufactures and markets a variety of products including glass, paint, and chemicals under the trademark PPG. Defendant, a Delaware corporation with a place of business in Massachusetts, is engaged in the delivery of medical diagnostic services. These include pediatric pneumograms[1] and pneumo-cardiograms[2] sold under the trademarks PPG and PCG respectively.

Plaintiff alleges that defendant, through its use of the trademarks PPG and PCG, has diluted or is likely to dilute the allegedly distinctive quality of the PPG Industries' name and trademark and injure plaintiff's business reputation. In addition to the trademark dilution claim, the case originally included claims for trademark infringement and unfair competition. Summary judgment was granted in favor of the defendant on these two claims on November 29, 1982. In taking such action the court gave collateral estoppel effect to the decision of the Court of Customs and Patent Appeals. That court found no likelihood of confusion as a result of the defendant's use of the PPG mark and dismissed plaintiff's opposition to the defendant's registration of the mark. *PPG Industries v. Clinical Data Inc.*, 681 F.2d 823 (CCPA 1982) (appeal from the decision of the Trademark Trial and Appeal Board dismissing PPG Industries' opposition to Clinical Data's registration of the PPG mark).

Summary judgment was also granted on the dilution claim after plaintiff failed to submit an opposition and the court determined there was insufficient evidence to support any of the recognized interpretations of dilution. However, the court thereafter determined that the plaintiff had previously been given an extension of time to oppose the defendant's summary judgment motion. Upon consideration of the plaintiff's opposition, the court on December 2, 1982 retracted its allowance of summary judgment on the dilution claim. The case was tried on the dilution claim on June 15 and July 26, 1983.

Plaintiff seeks an injunction preventing defendant from using the terms PPG and PCG and directing the defendant to deliver up for impoundment and destruction all materials and equipment used by defendant in the conduct of its business. Based on all the evidence adduced at trial, the court finds that judgment must enter for the defendant and makes the following Findings of Fact and Rulings of Law.

## FINDINGS OF FACT

Plaintiff has used the letters PPG in its tradename at least as far back as 1968, and

---

1. A pediatric pneumogram is a diagnostic technique that is used for detecting and quantifying apnea (cessation of breathing) and bradycardia (slowing of heart rate) in infants.

2. A pneumo-cardiogram is a diagnostic technique for recording respiration and ECG activity in infants who may be at high risk for SIDS ("sudden infant death syndrome"), commonly known as "crib death."

over that period has spent in excess of $4.75 million dollars each year in advertising products using the PPG Industries tradename. Some of the plaintiff's products are used in construction and maintenance of medical facilities. Plaintiff, however, has never sold medical diagnostic equipment or services, and has never indicated any intention of doing so.

Defendant has used the letters PPG as a trademark for its pediatric pneumogram equipment and services since 1975. The letters PPG were selected by the defendant's president as an acronym for Pediatric Pneumogram. Defendant first used the letters PCG in 1979 to describe its pneumocardiogram equipment and services. Again the letters were selected as an acronym. Both PPG and PCG have been federally registered as trademarks with the United States Patent and Trademark Office. The defendant has used the PPG and PCG marks on or in connection with a large variety of technical and advertising materials. Defendant's products and services are used only by medical professionals familiar with this sophisticated technology. The defendant has never manufactured or sold any products or services similar to plaintiff's.

### RULINGS OF LAW

Plaintiff's claim for trademark dilution is brought under the Massachusetts Anti-Dilution Statute, M.G.L. c. 110B, § 12, which states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this Chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

■ The first of two essential elements of a dilution claim under this statute is a showing that the mark in question is distinctive. *Pignons S.A. de Mecanique v. Polaroid*, 657 F.2d 482 (1st Cir.1981), cit-

ing *S.S. Kresge v. United Factory Outlet*, 598 F.2d 694, 697 (1st Cir.1979). This first element encompasses "not merely a distinctive trade name such as a coined word but also .... [the] characteristic quality inherent in any valid trade name after it has acquired a distinctive secondary meaning." *Tiffany & Co. v. Boston Club Inc.*, 231 F.Supp. 836, 843 (D.Mass.1964), *quoting Food Fair Stores v. Food Fair*, 83 F.Supp. 445, 451 (D.Mass.1948), *aff'd.*, 177 F.2d 177 (1st Cir.1949). In the instant case I find that plaintiff's trademark enjoys a widespread national reputation and much goodwill, that the mark identifies the particular source of plaintiff's products in the mind of the public, that plaintiff has advertised the mark extensively, and that plaintiff sells a high volume of products bearing the PPG mark. Plaintiff's trademark has, therefore, acquired a distinctive secondary meaning for purposes of a dilution claim. *Tiffany & Co. Inc.*, 231 F.Supp. at 843; *Southwestern Bell Tel. Co. v. Nationwide Ind. Dir. Serv., Inc.*, 371 F.Supp. 900 (W.D. Ark.1974).

■ The second essential element of a dilution claim under the Massachusetts statute is a showing that the defendant's use of a mark similar to plaintiff's mark has created the likelihood of dilution. *Pignons*, 657 F.2d at 494. In *Pignons*, the First Circuit noted three interpretations that have been given to the term trademark dilution. First, the term has sometimes been restricted to the injury to the value of a mark caused by actual or potential consumer confusion. 657 F.2d at 494, *citing Esquire Inc. v. Esquire Slipper Manuf. Co.*, 139 F.Supp. 228, 232–33 (D.Mass. 1956), *vacated and remanded on other grounds*, 243 F.2d 540 (1st Cir.1957); *see also 265 Tremont Street, Inc. v. Hamilburg*, 321 Mass. 353, 357, 73 N.E.2d 828 (1947).

■ It is clear, however, from the specific language of the Massachusetts statute and the general philosophy underlying it that a showing of consumer confusion is not *necessary* to prove dilution. M.G.L. c.

110B, § 12 (injunctive relief available "notwithstanding ... the absence of confusion as to the source of goods or services"); 3A R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 21.11 (4th ed. 1981) ("The test for dilution should not be related to or limited by the test for confusion. Even though there may be no confusion, the distinctiveness of a famous trademark may be debilitated by another's use and this is the essence of the wrong.") Nevertheless, a showing of consumer confusion would be *sufficient* to sustain a dilution claim. *Lamda Electronics v. Lambda Tech Inc.*, 515 F.Supp. 915, 930 (S.D.N.Y.1981). In the instant case, however, the Court of Customs and Patent Appeals, in denying defendant's opposition to plaintiff's registration of the PPG mark, found no likelihood of confusion. *PPG Industries Inc. v. Clinical Data Inc.*, 681 F.2d 823 (1982). This court previously gave collateral estoppel effect to that holding with regard to the trademark infringement and unfair competition claims and now does so again with regard to the dilution claim. The "consumer confusion" interpretation of dilution is therefore unavailing in the present action.

The second view of trademark dilution is as an "injury that results from the use of a mark by the defendant in a way that detracts from, draws on or otherwise appropriates the goodwill and reputation associated with plaintiff's mark." *Pignons*, 657 F.2d at 494. One commentator describes this type of dilution as "tarnish[ing] the affirmative associations a mark has come to convey." 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 84.2 at 954–55.

In the instant case I have already found that the plaintiff's mark enjoys a widespread national reputation and much goodwill. At trial, however, plaintiff failed to adduce sufficient evidence that defendant's use of the PPG mark has tarnished or is likely to tarnish these affirmative associations. This lack of evidence distinguishes the instant case from others where dilution was found. In *Tiffany*, 231 F.Supp. at 842–44, for example, evidence included defendant's advertisements which were found to have had the potential to detract from the public's association of plaintiff's name with an image of high quality and culture. Based on such facts and other proffered evidence, the court found "that there is a real probability that the continued operation of the defendant under its present name will detract from the reputation of the mark 'Tiffany' ...." *Id.* In the instant case a similar finding is unsupported by the evidence.

Even if plaintiff could adduce some evidence of harm to the goodwill and reputation of its mark, as the *Pignons* case notes, the use of a uniquely identifying tradename in conjunction with a mark may be an adequate remedy. 657 F.2d at 495. Based on a review of the proffered exhibits, I find that defendant uses the tradename "Clinical Data Inc." in close association with the mark PPG on virtually all of its sales and technical literature, labels and markings. In addition, defendant frequently uses the descriptive phrase "pediatric pneumogram" in conjunction with the acronym PPG. The First Circuit recently considered a similar situation in *Astra Pharmaceutical Products Inc. v. Beckman Instruments*, 718 F.2d 1201, 1209 (1st Cir.1983). The defendant there marketed a blood analysis machine under the mark "ASTRA," the same mark plaintiff used on its pharmaceutical products. In *Astra*, the court concluded that appropriation of the goodwill and reputation associated with plaintiff's mark was a "virtual impossibility." *Id.* The court found persuasive the fact that "[t]he Beckman name is printed in full view on its analyzers, and the full name of the analyzer is printed under the 'ASTRA' mark." *Id.* In the instant case defendant's use of the identifying tradename "Clinical Data Inc." and descriptive phrase "pediatric pneumogram" in association with the PPG mark persuades the court that harm to the goodwill and reputation of plaintiff's mark is unlikely.

The third interpretation of trademark dilution is as "any diminution in the uniqueness and individuality of the plaintiff's

mark resulting from the defendant's use of a similar mark." *Pignons*, 657 F.2d at 495. Callman in his treatise describes this harm as the tendency "to blur a mark's product identification," and says the gravamen of a complaint under this interpretation of dilution "is that the continuing use of a mark similar to the plaintiff's will inexorably have an adverse effect upon the value of the plaintiff's mark, and that, if he is powerless to prevent such use, the plaintiff's mark will eventually be deprived of all distinctiveness." 3A R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 21.11. Regarding this theory, commentators and the First Circuit on at least one occasion have said that no showing of similarity between the products at issue is necessary to sustain a dilution claim. *See id.* § 21.12 ("Any use of such famous marks as 'Aunt Jemima,' 'Beefeater,' 'Budweiser,' 'A & P,' 'RCA,' or 'WOR' ... for products or services other than the original should be enjoined, whether or not there is any similarity between the goods."); *Pro-phy-lac-tic Brush Co. v. Jordan Marsh Co.*, 165 F.2d 549, 553 (1st Cir.1948) ("[T]he 'dilution doctrine' ... operates to extend the protection of the trademark law to the situation presented when similar marks are used on dissimilar goods.... Thus the doctrine may be invoked to protect the owner of a mark for automobiles and airplanes from the use by another of a very similar mark for radio tubes....").

However, the First Circuit, in two recent opinions, has shown a reluctance to apply the expansive view of dilution discussed above. The *Astra* court, in rejecting the dilution claim, focused on the lack of similarity between plaintiff's and defendant's products, and thereby seemingly rejected its earlier explication of dilution:

We have already noted that, while the Beckman analyzer and Astra products may be in the same broad health care field, there is sufficient dissimilarity to prevent confusion. *For the same reasons, there is sufficient dissimilarity to prevent dilution.* If the other registrations and uses of the "ASTRA" mark have not already diminished the uniqueness of Astra's mark, Beckman's use of it on its analyzer will not diminish it, either.

718 F.2d at 1210. And the court in *Pignons*, after noting the existence of the three interpretations of dilution, restricted the dilution doctrine under the facts of that case to the two interpretations already considered: consumer confusion and appropriation of goodwill or reputation. The court said:

Pignons' claim of dilution thus rests on some kind of supposed incremental harm sustained through Polaroid's use of a commonplace word, widely associated with many situations and products, *where there is shown neither product confusion nor misappropriation of goodwill or reputation.* This will not do. We have found no case to support the proposition that an injury so attenuated and speculative is cognizable under the antidilution statute. We are in accord with Judge Aldrich's comments 26 years ago:

Where dilution of the sort here objected to is inherent in the nature of the mark ... I will not hold that a non-confusing and otherwise proper use of that word in a different mark can be enjoined simply because it may increase plaintiff's instability. *Dobeckmun*, [Co. v. Boston Packaging Machinery Co.], 139 F.Supp. [321] at 323 [ (1955) ] (Aldrich, D.J.).

657 F.2d at 494–95 (emphasis added).

Following the First Circuit's recent, more restricted approach to dilution, the court finds no confusion or appropriation of goodwill or reputation in the instant case. The products at issue are at least as dissimilar as those in *Astra*, and perhaps more so because they are not even part of "the same broad health care field." 718 F.2d at 1210. In this regard, the court agrees with the finding made by the Trademark Trials and Appeals Board:

While opposer has shown that its products are used in medical facilities, such

as hospitals and laboratories, in connection with the construction and maintenance of those facilities, the fact remains that opposer does not manufacture any product even remotely connected to the treatment of patients while applicant provides a specific, highly technical, specialized service used by pediatric physicians. Therefore, under the reasoning of *Astra,* the court finds "sufficient dissimilarity to prevent dilution." 718 F.2d at 1210.

Even if the court were to apply the more expansive approach to dilution discussed above, it is doubtful that plaintiff could succeed on a dilution claim. First, as already noted, the defendant almost always uses the PPG mark in conjunction with the tradename "Clinical Data Inc." or the descriptive phrase "pediatric pneumogram." Such usage would tend to prevent diminution in the uniqueness and individuality of the plaintiff's mark. Furthermore, even in those situations where the descriptive phrase "pediatric pneumogram" is not used in association with the PPG mark, it is likely that a substantial number of the medical professionals using the PPG product are aware of the underlying meaning of the acronym given their general familiarity with acronyms to describe medical equipment and services. Finally, in some jurisdictions, the absence of predatory intent by the more recent user of the name is considered a relevant factor in assessing a claim under an anti-dilution statute, since relief is equitable in origin. *Sally Gee, Inc. v. Myra Hogan Inc.,* 699 F.2d 621, 624 (2d Cir.1983). The parties in this case have stipulated that the letters PPG were selected by defendant's president as an acronym for pediatric pneumogram. There is no evidence that in selecting this acronym the defendant intended to prey on the identity or reputation of plaintiff's tradename.

For the reasons discussed above, I find that plaintiff has failed to adduce evidence sufficient to succeed on a claim under the Massachusetts Anti-Dilution statute. There is simply not enough evidence to show that defendant's use of the trademark PPG is likely to dilute plaintiff's

trademark under any of the interpretations of dilution recognized in this circuit. The court finds the same with regard to the PCG trademark, given its even more tenuous relationship to plaintiff's mark. Accordingly, judgment must enter for the defendant.

SO ORDERED.