E. & J. GALLO WINERY, a Corporation,
Plaintiff,

v.

BEN R. GOLTSMAN & CO., Inc., also
doing business as Alabama Wine As-
sociation, a Corporation, Defendant.

Civ. A. No. 1488–N.

United States District Court
M. D. Alabama, N. D.

March 20, 1959.

Hinson & Hamilton, Montgomery, Ala., and William G. Mackay, San Francisco, Cal., for plaintiff.

Rushton, Stakely & Johnston, Montgomery, Ala., and Watson, Leavenworth, Kelton & Taggart, New York City, for defendant.

JOHNSON, District Judge.

This cause, coming on to be heard in open court on the 16th day of February, 1959, is now submitted to the Court upon the pleadings, the proof—consisting of the oral testimony of several witnesses and the exhibits thereto—certain interrogatories and answers thereto, and the briefs submitted by the parties.

The plaintiff, E. & J. Gallo Winery, a California corporation, brings this action against Ben R. Goltsman & Co., Inc., also doing business as Alabama Wine Association, an Alabama corporation, alleging that the defendant has adopted and is now using a trademark that is "confusingly similar" to plaintiff's registered trademark, in violation of the trademark laws of the United States,[1] and because of said alleged violation asks this Court to enjoin the defendant, its agents and employees from using the "confusingly similar" trademark. Plaintiff also seeks to have this Court order the defendant to deliver up to this Court for the purpose of destruction all labels and printed matter bearing the alleged infringing trademark and that this Court order said defendant to account for and pay to the plaintiff all profits made by said defendant by the use of said alleged infringing trademark.

To the plaintiff's claim, the defendant pleads the general issue and further contends that this Court has no jurisdiction in this cause, since this defendant was not and is not dealing "in commerce" within the meaning of Title 15 U.S.C.A. § 1114.

From the evidence presented, this Court finds that the plaintiff has been for a long number of years and now continues to be engaged in the wine business in the State of California, producing and selecting and marketing wines throughout the United States. The plaintiff has a reputation for producing and marketing wines of high quality throughout the United States and within this district. Since April of 1957, this plaintiff has used the distinctive trademark Thunderbird on a certain grade of wine. This trademark has been continuously used by this plaintiff placing it on the labels, which labels are placed upon the wine bottles, in which bottles the wine is bottled and distributed. Plaintiff has engaged in an advertising campaign almost continuously since the adoption of the trademark Thunderbird, and said trademark has become well and familiarly known and established throughout the United States and within this district as the trademark of this plaintiff for this particular wine. The trademark Thunderbird was duly registered in the United States Patent Office, and this plaintiff is the owner of same, it being identified as registered No. 656,907, dated January 7, 1958. The trademark Thunderbird has also been duly registered under the laws of the State of Alabama, this registration having taken place on July 14, 1958. The plaintiff's trademark Thunderbird is, generally, in a fanciful style of type.

1. 15 U.S.C.A. §§ 1051–1127.

The word Thunderbird, as used by the plaintiff, is printed in red and occupies a prominent position on plaintiff's wine label. Also on plaintiff's wine label is the word Gallo. The word Gallo is, in each instance, used immediately above the word Thunderbird and is printed on said label in letters as large or larger than those used in printing the word Thunderbird. The word Gallo is printed in black. Immediately above the word Gallo on plaintiff's label is a likeness or a representation of a thunderbird. This representation of the thunderbird occupies a prominent place on the label and is in red and gold colors. Also on plaintiff's label are printed instructions to "Serve Cold" and printing that identifies this wine as "Aperitif Wine," and also that it is "Grape wine with natural pure flavors."

The evidence in this case further shows that the plaintiff adopted and uses this label on a special natural grape wine, with natural pure flavors, and that the designation Thunderbird is intended to and does set this type of wine apart from every other wine produced and marketed by the Gallo Company. However, this aperitif grape wine, with natural pure flavors, is only a variety of wine, such as is port, muscatel, sherry, etc.

The defendant is a distributor of various varieties of wine in the State of Alabama. The defendant produces no wine, but secures the wine that it distributes, mostly in bulk, from California producers. The defendant distributes wine only in the State of Alabama and distributes several varieties, such as La Rosa, Old Constitution, San Pedro, and Old Abbey. In addition, the defendant also distributes a formula wine of the aperitif variety, which is also a grape wine with natural pure flavors. The defendant commenced distributing this wine in July of 1958, and identifies this aperitif formula wine by the name Thunderbolt. The trademark Thunderbolt has not been registered with the United States Patent Office. The label used by the defendant on its Thunderbolt wine has prominently written across the center thereof, in large black type, the word Thunderbolt. Also on defendant's label immediately under the word Thunderbolt are the words "Private Stock," and immediately below that is a round, red badge, approximately one inch in diameter, in which there is written "Grape wine with pure natural flavors."

The basis for the defendant's claim that this Court does not have jurisdiction is, generally, that defendant was and is not dealing "in commerce" within the meaning of the Lanham Trade-Mark Act, (1946), Title 15 U.S.C.A. §§ 1051–1127. For the reasons hereinafter stated, this contention is without merit. It is without merit, first, because there is a diversity of citizenship between the parties, the plaintiff being a California corporation and the defendant being an Alabama corporation. Because of the unfair competition aspect of this litigation and the evidence submitted in support of and in opposition thereto, the requisite jurisdictional sum is to be tested by the value of the good will sought to be protected and not by the extent of the damages plaintiff claims. See Nims on Unfair Competition and Trade-Marks, 4th Ed., published 1947, Vol. 2, § 363, and Seaboard Finance Company v. Martin, 5 Cir., 1957, 244 F.2d 329. In addition to the foregoing, the contention made by the defendant that this Court does not have jurisdiction of this cause is also without merit because this defendant was, in the use of the alleged infringing trademark Thunderbolt dealing "in commerce" within the meaning of the Lanham Trade-Mark Act. The Lanham Act defines "commerce" as follows:

"The word 'commerce' means all commerce which may lawfully be regulated by Congress." Title 15 U.S.C.A. § 1127—

and,

"For the purposes of this chapter a mark shall be deemed to be used in commerce (a) on goods when it is placed in any manner on the goods or their containers or the displays

associated therewith or on the tags or labels affixed thereto and the goods are sold or transported in commerce and (b) on services when it is used or displayed in the sale or advertising of services and the services are rendered in commerce."

As to the jurisdiction of this Court, Title 15 U.S.C.A. § 1121, states:

"§ *1121. Same; jurisdiction of Federal courts*

"The district and territorial courts of the United States shall have original jurisdiction, the circuit courts of appeal of the United States and the United States Court of Appeals for the District of Columbia shall have appellate jurisdiction, of all actions arising under this chapter, without regard to the amount in controversy or to diversity or lack of diversity of the citizenship of the parties."

Jurisdiction exists under the trademark act, it seems, without regard to the citizenship of the parties or the amount in controversy, but it is essential to jurisdiction that there has been an infringement which falls within the terms of the trademark act, as by the use of the trademark in interstate or foreign commerce, and that the trademark be a registered one.

In Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 1938, 305 U.S. 315, 59 S.Ct. 191, 195, 83 L.Ed. 195, it was held that under the provisions of the Trade-Mark Act of 1920 that:

"Unless plainly unsubstantial, the allegation of registration under the act is sufficient to give jurisdiction of the merits."

The test is, therefore, whether the use by the defendant of the alleged infringing trademark Thunderbolt in intrastate commerce substantially affected interstate commerce engaged in by the plaintiff's use of the registered trademark Thunderbird. If so, this defendant was engaged "in commerce" within the meaning of the Lanham Act and this Court has original jurisdiction of this case, aside from the diversity aspect of the case. In this connection, this Court specifically finds from the evidence presented that defendant's use of the unregistered (except in Alabama) trademark Thunderbolt in intrastate commerce had and does now have a substantial economic effect on plaintiff's interstate use of its registered trademark Thunderbird. This Court, therefore, specifically concludes that this defendant is engaged "in commerce" within the meaning of the Lanham Trade-Mark Act and that this Court has jurisdiction in this case.

■■ The defendant's general issue plea raises the real question in this case, that question being: Is defendant's unregistered trademark Thunderbolt, as used on the wine distributed by it, "confusingly and deceptively" similar to plaintiff's registered trademark Thunderbird, as used on its wine? The test of infringement assumes there will be an average purchaser buying in the usual manner. The test excludes the careless and/or the indifferent. See Wrisley Co. v. Iowa Soap Co., 8 Cir., 122 F. 796, and Reynolds & Reynolds Co. v. Norick, 10 Cir., 114 F.2d 278. The plaintiff here offered no evidence that there was or had been any confusion existing in the mind of any of the buying public. Of course, it is not necessary that plaintiff prove actual confusion, but in the absence of any such proof this Court must subject the registered trademark and the alleged infringing trademark to the three tests of sound, sight, and meaning. See Sleeper Lounge Company v. Bell Manufacturing Co., 9 Cir., 253 F.2d 720.

■ Applying these three tests, this Court specifically finds and concludes that there is no probability that the average person will be so confused by the defendant's use of the alleged infringing trademark Thunderbolt as to believe that defendant's product was produced by Gallo Thunderbird Wine Corporation. This Court further finds that there is no reasonable likelihood that the

wine-buying public [2] will be deceived or confused by the two trademarks in question. In this connection, the statement of the Fifth Circuit Court of Appeals in Squirrel Brand Company v. Barnard Nut Co., 1955, 224 F.2d 840, 844, certiorari denied 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860, is appropriate:

"* * * fundamentally, deception, actual or probable, is the essence of an action for infringement or unfair competition. The test is whether there is a probability that the average person will be so confused by the use of the device complained of as to believe that the products offered by the infringer were produced by the trademark owner, —that there is likelihood that prospective purchasers will be misled to appellant's [trademark owner] damage. * * * "

A consideration of all of the evidence, including a close study of the trademarks as used by the plaintiff and defendant on their formula aperitif wines, forces this Court to the conclusion that any similarity of sound and sight that may exist between the registered trademark Thunderbird and the alleged infringing trademark Thunderbolt is more than offset by the dissimilarity of meaning, the manner in which wine is sold in the State of Alabama,[3] and the degree of care generally exercised by wine purchasers. This Court, therefore, also concludes that the use by the defendant of the trademark Thunderbolt does not constitute an infringement of the registered trademark Thunderbird.

In accordance with the foregoing and for good cause shown, it is, therefore, the Order, Judgment and Decree of this Court that the plaintiff's complaint against this defendant for infringement of plaintiff's registered trademark No. 656,907 be and the same is hereby dismissed. It is the further Order, Judgment and Decree of this Court that the costs be and they are hereby taxed against plaintiff, for which execution may issue.

---

2. The evidence in this case makes it clear that the wine-buying public—insofar as their selection and purchase of wine is concerned—is a highly discriminating group.

3. The evidence reflects that practically all of the wine in the State of Alabama is sold through state owned and operated liquor stores. The law requires that the prospective purchaser select from display counters the product he desires, and after making that selection he is required to request that product of the salesman by name. After paying the cashier for the product, it is produced by the salesman for the purchaser's inspection prior to the time it is packaged. Thus, in the State of Alabama it is virtually impossible for a wine purchaser to be confused by similar trademarks.