E. & J. GALLO WINERY, Plaintiff,

v.

CONSORZIO DEL GALLO
NERO, Defendant.

No. C–90–1498–DLJ.

United States District Court,
N.D. California.

Aug. 13, 1991.

G. Kip Edwards and Matthew D. Powers of Orrick, Herrington & Sutcliffe, San Francisco, Cal., for plaintiff.

Griffith B. Price, Jr., Mark S. Sommers of Finnegan, Henderson, Farabow, Garrett & Dunner, Washington, D.C., and John H. Bickel of Landels, Ripley & Diamond, San Francisco, Cal., for defendant.

## ORDER

JENSEN, District Judge.

On July 31, 1991, this Court heard the parties' cross-motions for summary judgment and plaintiff's cross-motion for expenses. G. Kip Edwards of Orrick, Herrington & Sutcliffe appeared for plaintiff E. & J. Gallo Winery. Griffith B. Price, Jr., of Finnegan, Henderson, Farabow, Garrett & Dunner appeared for defendant Consorzio del Gallo Nero. Having considered the papers submitted, the arguments of counsel, the applicable law, and the entire record herein, the Court GRANTS summary judgment in favor of plaintiff on all causes of action, DENIES defendant's motion for summary judgment on its claim for declaratory relief, and DENIES plaintiff's cross-motion for expenses for the following reasons.

## I. BACKGROUND

This is an action for trademark infringement and dilution brought by plaintiff E. & J. Gallo Winery ("Gallo") against defendant Consorzio del Gallo Nero ("Gallo Nero"). Gallo, the largest winery in the United States, produces and sells a variety of wines featuring the "Gallo" trademark and is the owner of several federal registrations of the "Gallo" mark. Since 1933, Gallo has consistently used the "Gallo"

name in relation to its wines and has sold some 2 billion bottles of wine bearing the "Gallo" mark to consumers through retail establishments of all types, including restaurants, grocery stores, wine shops, and liquor stores. Finally, over the past 50 years, Gallo has spent some $500 million in promoting the "Gallo" brand of wines, and Gallo's advertising is presently calculated to reach every consumer in the United States approximately 50–70 times a year.

Defendant Gallo Nero is an Italian trade association based in Florence, Italy, that promotes Chianti Classico wine produced by its individual members in the Chianti region of Italy. Prior to the formation of Gallo Nero in 1987, Chianti Classico producers were represented by the Consorzio Vino Chianti Classico ("CVCC"), which was formed in 1924. CVCC had consistently utilized the symbol of a black rooster, or "gallo nero," to represent its wines, a symbol with a history of strong association with the Chianti region of Italy. In particular, the symbol appeared on the neck seal of its bottles, surrounded by the designation "Consorzio Vino Chianti Classico." The name of the successor organization, Consorzio del Gallo Nero, was selected on the basis of this association between the symbol and the wines of the Chianti region, and defendant has continued the tradition of using the black rooster symbol on its neck seals, substituting the designation "Consorzio del Gallo Nero" for the previous one. However, although Gallo Nero has produced such neck seals, they have not yet been used on any Gallo Nero wine distributed in the United States.

In late 1986, CVCC published a full-page advertisement in the *Wine Spectator* using the words "Gallo Nero" to promote Chianti Classico wine. Plaintiff sent a cease-and-desist letter to CVCC in early 1987, warning that such use in the United States constituted trademark infringement. CVCC stopped its U.S. marketing campaign based, in part, on the warning letter from Gallo. In 1989, defendant Gallo Nero launched a second U.S. marketing campaign, again utilizing the words "Gallo Nero." In addition, a Gallo Nero marketing plan for years 1989–91 stated as its object the "increased trade and consumer recognition and awareness" of the Gallo Nero name in promoting its wine in the United States.

Following the use of the "Gallo Nero" name in the 1989 advertising, plaintiff filed the present action, stating claims for trademark infringement and dilution through defendant's use of the term "Gallo" in connection with the U.S. promotion and distribution of its wines. Gallo Nero subsequently counterclaimed, seeking a declaration of non-infringement and non-dilution of the Gallo mark by defendant's use of the term "Gallo Nero" in conjunction with other words and distinguishing features.

At the outset of the litigation, the parties entered into settlement discussions. Gallo's initial proposal was that it would waive all attorneys' fees if defendant agreed to an injunction restraining Gallo Nero's use of the word "Gallo" in the United States. This proposal was rejected, and although subsequent proposals were made over the course of the months following, Gallo never moved from its requirement that defendant cease all use of the term "Gallo" in its promotion and distribution of wines in the United States. On June 25, 1991, Magistrate Judge Wilken of this District communicated Gallo Nero's latest settlement offer, which mirrored the terms of the original proposal in August 1990: no use of "Gallo" in the United States, with Gallo to bear its costs and attorneys' fees. Finally, as of July 10, 1991, Gallo Nero has voluntarily discontinued all use of the term "Gallo" in the United States unless otherwise permitted by order of this Court.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Recognizing that summary judgment motions can contribute significantly to the resolution of litigation when there are no factual issues, the Supreme Court and the Ninth Circuit have established the following standards for consideration of such motions: "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *'specific facts* showing that there is a genuine issue for trial.' " *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quoting Fed.R.Civ.P. 56(e) (emphasis added) and citing *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied*, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). With respect to these specific facts offered by the non-moving party, the court does not make credibility determinations or weigh conflicting evidence, and is required to draw all inferences in a light most favorable to the non-moving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Rule 56(c) nevertheless requires this Court to enter summary judgment, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 106 S.Ct. at 2552. The mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient: "[T]here must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). This Court thus applies to either a defendant's or plaintiff's motion for summary judgment the same standard as for a motion for directed verdict: "[W]hether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

## III. DISCUSSION

Gallo seeks summary judgment on all its claims, contending that Gallo Nero's use or intended use in the United States of the "Gallo" name in conjunction with defendant's wines constitutes infringement and dilution of Gallo's trademarks. Gallo Nero in response contends that plaintiff's motion is moot in that as of early July 1991, defendant has discontinued any use of the "Gallo Nero" name in the United States unless otherwise authorized by this Court. In pursuit of the latter, Gallo Nero seeks summary judgment on its request for a declaration that it may use the "Gallo Nero" name under its full name or in conjunction with other distinguishing matter without infringing or diluting the "Gallo" mark.

### A. Gallo's claim for trademark infringement.

■ Trademark infringement under the Lanham Act is established when the infringer's use of the plaintiff's trademark creates a "likelihood of confusion." *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1217 (9th Cir.1987); *see also* 15 U.S.C. § 1114(1). In the Ninth Circuit, courts consider several factors in determining whether an allegedly infringing product creates a likelihood of confusion with a protected one:

(1) strength of the plaintiff's mark;

(2) similarity between plaintiff's and defendant's marks in sound, appearance, and meaning;

(3) similarity in the class of goods sold;

(4) similarity in the marketing channels used;

(5) degree of care likely to be exercised by the purchaser (*i.e.*, sophisticated consumers carefully selecting expensive goods versus "impulse" buying of "purchase-type" goods);

(6) evidence of actual confusion; and

(7) evidence of defendant's intent in adopting the allegedly infringing mark.

*Eclipse Assocs. Ltd. v. Data General Corp.*, 894 F.2d 1114, 1117 (9th Cir.1990) [hereinafter *Eclipse*]. The Court examines each of these factors in turn.

1. Strength of plaintiff's mark.

■ A registered mark is "presumed to be distinctive and should be afforded the utmost protection." *Lois Sportswear USA, Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 871 (2d Cir.1986). Indeed, proper and current registration of a trademark is "conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce." 15 U.S.C. § 1115(b). Therefore, in light of Gallo's current federal registration of several versions of the "Gallo" mark, plaintiff has established as an initial matter the validity and distinctiveness of the mark and Gallo's exclusive right to use the mark in promoting and selling its wines in the United States.

In addition to these statutory presumptions, the Gallo mark itself has been held by a sister court of this Circuit to have achieved "virtually universal recognition as a trademark for wine," and that it is "universally known both nationally and in California, and has become an extraordinarily strong and distinctive mark." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 12 U.S.P.Q.2d 1657, 1661, 1667, 1989 WL 159628 (E.D.Cal.1989). This conclusion is further supported by Gallo's undisputed showing that it has used the Gallo mark in relation to its wines for over 50 years; it has spent some $500 million in advertising its wines distributed under the mark; and it has sold to consumers some 2 billion bottles of wine bearing the Gallo mark. *See Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir.1988) [hereinafter *Century 21*].

■ Gallo Nero contests the strength of the Gallo mark by noting that there are numerous third-party uses of the "Gallo" name, and that "Gallo" itself is merely a common surname and basic element of Italian vocabulary. However, "[e]vidence of other unrelated potential infringers is irrelevant to claims of trademark infringement," *Eclipse*, 894 F.2d at 1119, and Gallo Nero has not shown that these third-party uses are in any way connected to the production, promotion, and sale of wine, much less that any of these uses has achieved significant consumer recognition. *See Scarves by Vera, Inc. v. Todo Imports Ltd.*, 544 F.2d 1167 (2d Cir.1976); *Charles Schwab & Co. v. Hibernia Bank*, 665 F.Supp. 800 (N.D.Cal.1987); *Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.*, 673 F.Supp. 1238 (S.D.N.Y.1987). Therefore Gallo Nero's evidence of third-party users and uses is neither persuasive nor relevant to the issue of the strength of the "Gallo" mark.

■ Secondly, a family name is entitled to protection as a mark so long as it has acquired a recognized "secondary meaning" through use, advertising, and public recognition. *Century 21*, 846 F.2d at 1179; *Rodeo Collection, Ltd. v. West Seventh*, 812 F.2d 1215, 1218 (9th Cir.1987). As set forth more fully in *Gallo Cattle* and as supported by the present record, "Gallo" has clearly become associated with wine in the United States such that its evolution to "secondary meaning" status may not be seriously questioned.

In conclusion, the Court finds that Gallo has established both its exclusive right to use the "Gallo" trademark under federal law and that the trademark itself is exceptionally strong when used in relation to the promotion and sale of wine in the United States. While the strength of plaintiff's mark is but one of several issues to be considered in determining whether there is a likelihood of confusion between the parties' products, *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1455 (9th Cir.1991), the Court notes that "[a] strong mark is 'afforded the widest ambit of protection from infringing uses.'" *Id.* (quoting *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 349 (9th Cir.1979)).

2. Similarity of marks used.

█ Similarity of marks is judged by their sound, appearance, and meaning. *Century 21,* 846 F.2d at 1179. Gallo contends that the two marks share the total identity of the substantive term "Gallo" and are therefore substantially similar for purposes of trademark infringement. *Id.* ("The identical dominant term ... is the lead word in each entity's name"); *see also Rodeo Collection,* 812 F.2d at 1219.

█ Gallo Nero in opposition argues that its use of surrounding terms, *i.e.,* Consorzio del Gallo Nero, sufficiently distinguishes the latter from the "Gallo" mark to render the two uses dissimilar. However, it is undisputed that Gallo has valid, current federal registrations of the "Gallo" mark used in conjunction with other words, *e.g.,* "Ernest & Julio Gallo," and that Gallo has consistently combined the word "Gallo" with other descriptive terms, *e.g.,* "Gallo Premium Blush" and "Gallo Classic Burgundy." Therefore, as Gallo argues, there is a logical conclusion that consumers are accustomed to seeing the "Gallo" mark used in conjunction with other terms or surrounded by other words.[1] The distinctive term in each instance is "Gallo," which, as discussed above, has clearly obtained a unique status when coupled with wine. Finally, this characteristic would seem to be particularly maintained with regard to non-Italian-speaking consumers when the "Gallo" mark is surrounded by the foreign terms "Consorzio" and "Nero." Again, for English speakers, the "stand out" or significant term in the phrase "Consorzio del Gallo Nero" is the word "Gallo" when the phrase is encountered on or in connection with a bottle of wine.

Gallo Nero also argues that the presentation of the terms on the bottle sufficiently distinguish the two uses such that defendant's use is dissimilar to plaintiff's. Thus, even if the subject marks are identical, "their similarity must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the[ir] purchase." *Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240, 1245 (9th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); *see also Century 21,* 846 F.2d at 1179 ("[T]he district court judge, who had the opportunity to view examples of both parties' yard sign designs, found them to be sufficiently similar to hazard confusion."). Gallo Nero notes that the use of the term "Gallo" is always in conjunction with the term "Nero," and its proposed limitation to small script on the neck seal strengthens the immediate dissimilarity arising from the otherwise clearly different labels attached to the parties' bottles of wine.

Gallo does not respond to this particular argument, but the Court finds that Gallo Nero's argument, while having some merit, is neither dispositive nor persuasive on the issue of similarity between marks. As an initial matter, Gallo Nero is arguably well aware of the similarity of the "Gallo Nero" name to that of "Gallo" in light of defendant's interactions with foreign trademark offices. Specifically, in August 1984, defendant's predecessor, CVCC, sought to register the words "Gallo Nero" as a trademark in Canada. The application, however, was rejected because the Canadian trademark office concluded that "Gallo Nero" was likely to be confused with Gallo's registered marks. Moreover, just prior to commencing its U.S. marketing campaign, Gallo Nero opposed plaintiff's application to register "Ernest and Julio Gallo" in the United Kingdom on the ground that this mark would be "deceptive or confusing" with "Gallo Nero." *See* Supplemental Declaration of G. Kip Edwards exh. H.

---

1. In a footnote, Gallo Nero contends that Gallo is not entitled to assert an interest in the expanded "family" of terms incorporating the "Gallo" name with generic descriptions of a particular variety of wine. However, Gallo Nero provides no support for its proposition, nor is the Court persuaded that the term "Gallo Chablis Blanc" necessarily weakens the strength and clarity of the Gallo mark. *See* 1 J. Gilson, *Trademark Protection and Practice* § 5.04 (1991) ("If a business uses a group of trademarks which have a single component in common, the use of a mark having that component may be forbidden to others if the public believes it to be one of a 'family' of marks from a single source.").

In conclusion, the Court finds that the continued use of the term "Gallo" as a manifestation of a federally registered mark or in conjunction with other terms establishes not only that the mark itself is strong, but that the consuming public will find the single term "Gallo" to be wholly and uniquely distinctive whenever it is used in conjunction with the promotion or sale of wine in the United States.[2] Therefore, because "Gallo" is the single "dominant" or "substantive" term used by plaintiff on all its products—including the 2 billion bottles of wine already sold—defendant's use of the term "Gallo" even on a facially distinctive label or in conjunction with other terms does not divert this Court from its conclusion that, as a matter of law, the two terms are significantly similar for purposes of a finding of a likelihood of confusion between the two uses.

### 3. Similarity of goods sold.

■ "When the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir.1979); *see also Lindy Pen Co. v. Bic Pen Corp.,* 796 F.2d 254, 255 (9th Cir.1986) (*AMF* "expressed the obvious conclusion that a likelihood of confusion is more readily found when the goods compete and the marks are very similar."). Both parties are involved in the sale of wine, although of arguably different varieties. Gallo notes, however, that the Patent and Trademark Office has repeatedly found that wines of all types constitute a single class of goods. *Krug Vins Fins de Champagne v. Rutman Wine Co.,* 197 U.S.P.Q. 572 (T.T.A.B.1977); *L.N. Renault & Sons, Inc. v. Etablissements Leon Rigault,* 31 U.S.P.Q. 101 (Op. of Comm'r 1936). In fact, if Gallo Nero sought to register its name as a trademark, it would fall into the same class of goods as Gallo's

trademarks. *See* 37 C.F.R. §§ 6.1, 6.2 (1990).

Gallo Nero in opposition contends that the wines themselves are distinct, one produced in Italy while the other in the United States. Moreover, Gallo Nero's members produce only chianti wines, whereas Gallo effectively produces everything but Italian chianti. However, Gallo Nero cites no authority for finding a distinction between the wines produced by the parties, and representatives of Gallo Nero have themselves stated that Gallo Nero wines distributed in the United States are "in competition with every red wine that is being produced." *See* Deposition of Dario Lanzoni 282:12–17 [hereinafter Lanzoni Depo.] (Director of the Consorzio del Gallo Nero).

Therefore, the Court finds that the goods produced by Gallo and Gallo Nero are substantially similar for purposes of establishing a likelihood of confusion.

### 4. Similarity of marketing channels used.

Both parties market their products through retail establishments like wine shops and liquor stores, and utilize magazines for advertising purposes. Gallo Nero effectively does not dispute Gallo's showing on this issue; indeed, Gallo Nero notes use of the same retail establishment in Washington, D.C., the Mayflower Wine & Spirits Shop, by both parties in selling their respective wines. Moreover, the above deposition testimony that Gallo Nero wines are in direct competition with those of other producers also supports a finding that the wines are marketed by similar means. Therefore the Court finds as a matter of law that both parties use similar marketing channels to distribute their wines.

### 5. Degree of care exercised by purchasers.

■ Confusion between marks is generally more likely where the goods at

2. It is on this basis that the Court distinguishes the court-approved remedies reached in the *Gallo Cattle* case as here the allegedly infringing use is on a product which belongs to the same class of goods as plaintiff's. *Cf. AMF, Inc. v.* *Sleekcraft Boats,* 599 F.2d 341, 348 (9th Cir. 1979) (infringement can be found on the sole grounds that a similar mark is used on a similar, competing product).

issue involve relatively inexpensive, "impulse" products to which the average, "unsophisticated" consumer does not devote a great deal of care and consideration in purchasing. *Grey v. Campbell Soup Co.,* 650 F.Supp. 1166, 1175 (C.D.Cal.1986), *aff'd,* 830 F.2d 197 (9th Cir.1987); *Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc.,* 559 F.Supp. 1189, 1199 (E.D.N.Y.1983). Wine has been deemed an "impulse" product, and certainly so with respect to the average consumer, effectively compelling the consumer's reliance "on faith in the maker." *Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 733–34 (2d Cir. 1978); *see also id.* ("The average American who drinks wine on occasion can hardly pass for a connoisseur of wines."). Indeed, Gallo Nero employees themselves have testified that the average American consumer is unlearned in the selection of wine. *See* Deposition of Doreen Schmid 347:13–22 [hereinafter Schmid Depo.]; Declaration of Matthew D. Powers exh. E, at 179.

The only opposition Gallo Nero offers to Gallo's characterization of the wine-buying public is a single 1959 case from the Middle District of Alabama, stating that "the wine-buying public—insofar as their selection and purchase of wine is concerned—is a highly discriminating group." *E. & J. Gallo Winery v. Ben R. Goltsman & Co.,* 172 F.Supp. 826, 830 (M.D.Ala.1959). That case, however, involved plaintiff's "THUNDERBIRD" fortified wine—with the "Gallo" name above—versus the defendant's "THUNDERBOLT"—with the words "Private Stock" immediately below—both products arguably failing any classification as "fine wines." Moreover, with all due respect to Alabama, it would seem common knowledge that wine was not a widely appreciated beverage in the South in 1959.

On balance then, the Court finds that Gallo Nero has failed to contest either through evidence or legal support the characterization of the wine-buying public as generally unsophisticated "impulse" buyers who are an "easy mark for a [trademark] infringer." *Taylor Wine Co., Inc.,* 569 F.2d at 733–34. Therefore the Court finds that the lack of consumer sophistication

significantly enhances the likelihood of confusion between the two products.

6. Evidence of actual confusion.

 While evidence of actual consumer confusion provides strong support for a finding of a likelihood of confusion, " 'the failure to prove instances of actual confusion is not dispositive' " of an infringement claim. *Eclipse,* 894 F.2d at 1118 (quoting *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 353 (9th Cir.1979)). Thus evidence of actual confusion "is merely one factor to be considered ... and it is not determinative" if it is not shown. *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.,* 782 F.2d 1508, 1509 (9th Cir.1986). Therefore, at a minimum, the absence of actual confusion will not defeat an otherwise successful claim of infringement by Gallo as this Court must find only a *likelihood* of confusion.

Gallo Nero relies in significant part on the survey conducted by Dr. Jacob Jacoby, Merchants Council Professor of Consumer Behavior and Retail Management at the Stern School of Business, New York University, entitled "Consumer Perceptions of Wine Bottles Bearing the Consorzio del Gallo Nero Neck Seal" (the "Jacoby Survey"), to show that there is no likelihood of confusion between the parties' respective uses of the "Gallo" name. In the survey, individual participants were shown an array of eight bottles of red wine, including two bottles of Gallo wines and two bottles of Gallo Nero wines. Participants were then asked a series of questions designed to assess the likelihood of "point-of-sale" confusion as to the source of the respective wines. Dr. Jacoby found "only a trivial level of likely confusion as to source among these consumers," as "only three of the 216 respondents (1.4%) identified one or more E & J Gallo bottles and one or more Consorzio del Gallo Nero bottles as coming from the same source." Jacoby Survey at 3.

Gallo in response contends that the survey itself is irrelevant, and that even if it were, only 10 of the 216 respondents even referred to the neck seal. Thus Gallo argues that it is unclear whether each of the

respondents even saw the critical mark being tested. Moreover, Gallo emphasizes that failure to show "actual" confusion under survey conditions is not dispositive of an infringement claim. Indeed, Gallo notes that it would be impossible at this stage to show actual confusion other than in the artificial setting of a survey as Gallo Nero has not sold a single bottle of wine in the U.S. bearing the words "Gallo Nero." Finally, Gallo proffers its own survey evidence conducted by Robert Lavidge of Elrick & Lavidge, a custom marketing research firm (the "Lavidge Survey"). In that survey, 512 respondents were shown the neck seal with the "Consorzio del Gallo Nero" designation, and another 512 were shown the advertisement which appeared in the *Wine Spectator* in 1986. Gallo reports that 43% of the respondents unequivocally associated the neck seal with the Ernest & Julio Gallo Winery, and 38% did so with regard to the advertisement.[3] Lavidge Survey at 9–10.

Numerous courts hold a side-by-side comparison like the one conducted by Dr. Jacoby to be legally irrelevant in determining whether defendant's use of a similar mark leads to a finding of a likelihood of confusion.

> The proper test for likelihood of confusion is not whether consumers would be confused in a side-by-side comparison of the products, but whether confusion is likely when a consumer, familiar with the one party's mark, is presented with the other party's goods alone.

*Elizabeth Taylor Cosmetics Co. v. Annick Goutal, S.A.R.L.,* 673 F.Supp. 1238, 1248 (S.D.N.Y.1987); *see also Levi Strauss & Co. v. Blue Bell, Inc.,* 632 F.2d 817, 822 (9th Cir.1980) ("It is axiomatic in trademark law that 'side-by-side' comparison is not the test."); *James Burrough, Ltd. v. Sign of Beefeater, Inc.,* 540 F.2d 266, 275 (7th Cir. 1976) ("Side-by-side comparison is not the test in determining likelihood of confu-

sion," because "the test is not whether the public would confuse the *marks*" (emphasis in original)); *cf.* 1 J. Gilson, *Trademark Protection and Practice* § 5.03, at 5–70 (1991) (it is "well established that one word or other feature of a composite trademark may be considered the salient feature and be given greater weight than the surrounding elements"). Based on the foregoing, it would seem that Gallo Nero's survey evidence is irrelevant to the issue of infringement and that Gallo's own evidence is both relevant and dispositive.

On the other hand, other authorities maintain that the proper survey evidence is that which attempts to most closely replicate the marketplace setting in which consumers will typically encounter the competing marks. *Lindy Pen Co. v. Bic Pen Corp.,* 725 F.2d 1240 (9th Cir.1984), *cert. denied,* 469 U.S. 1188, 105 S.Ct. 955, 83 L.Ed.2d 962 (1985); 2 J. McCarthy, *Trademarks and Unfair Competition* § 24:13 (2d ed. 1984) ("[T]he closer the survey context comes to market place conditions, the greater the evidentiary weight it has."). Under such a view, then clearly the Gallo Nero survey has relevance in gauging a likelihood of consumer confusion when confronted with bottles of wine sporting the "Consorzio del Gallo Nero" name.

On summary judgment, drawing all inferences in the non-movant's favor, the Court finds nonetheless that there is *some* evidence of a likelihood of confusion under both surveys, even if the Jacoby Survey results in only a "trivial" showing. Moreover, even accepting that Gallo has overstated the results of its own survey, the "adjusted" statistics nonetheless establish that, again, there is *some* evidence of a likelihood of confusion as to source when a consumer is presented with the allegedly infringing "Gallo Nero" name. While such showings are not overwhelming, given that *no* bottle of defendant's wine bearing the "Gallo Nero" name has ever been sold in

---

**3.** Gallo Nero contends that the Gallo results are overstated as Gallo "assumed" that an answer of "Gallo" unequivocally indicated the plaintiff, rather than merely the respondent's reading of the word without making such a connection. While not amounting to the taking of judicial

notice, the Court notes the general tendency in California to refer to plaintiff by the single term "Gallo." Therefore the Court is persuaded that easily the majority of persons immediately answering "Gallo" were referring to the Ernest & Julio Gallo Winery.

the United States, and that failure to show actual confusion is not a prerequisite to finding a likelihood of confusion, the Court finds that Gallo Nero has sustained its burden on summary judgment with respect to this factor as well.

### 7. Defendant's intent in adopting the "Gallo Nero" name.

 Just as with actual confusion, a showing of intent is not necessary to support a finding of a likelihood of confusion. *Century 21,* 846 F.2d at 1178. However, where an infringer adopts a particular name with knowledge of plaintiff's mark, courts presume that there was an intent to copy the mark. *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341, 354 (9th Cir.1979); *Citibank, N.A. v. City Bank of San Francisco,* 206 U.S.P.Q. 997, 1009 (N.D.Cal.1980) ("One who adopts the mark of another for similar good[s] acts at his own peril and any doubt concerning the similarity of the mark must be resolved against him.").

The record here establishes that Gallo Nero was aware of the "Gallo" mark prior to beginning its U.S. marketing campaign in 1989, as demonstrated both by its predecessor's direct knowledge of the potentially infringing use of "Gallo" in its advertisements of "Gallo Nero" as well as the communications with the trademark offices of Canada and the United Kingdom. *See* Schmid Depo. 377:11–18.

 Gallo Nero in opposition contends that there was no intent to infringe Gallo's marks because the adoption of the "Gallo Nero" name was made in good faith and for sound business reasons. The Court readily acknowledges the extensive and colorful tradition surrounding the relation between the "Gallo Nero" symbol and the Chianti region of Italy. Moreover, neither the Court nor Gallo has any qualms

with Gallo Nero's continued use of the black rooster symbol to identify and distinguish its products in the U.S. marketplace. However, the present issue is not whether Gallo Nero had admirable motivations when it initially adopted its name in 1987, but whether Gallo Nero had knowledge of the potentially infringing effect its use of the "Gallo Nero" and "Consorzio del Gallo Nero" marks would have when it entered the U.S. wine market. The record establishes that Gallo Nero was so aware, and while there may be a question whether such knowledge rises to the level of willful infringement or bad faith, *see General Mills, Inc. v. Kellogg Co.,* 824 F.2d 622 (8th Cir.1987); *Nalpac, Ltd. v. Corning Glass Works,* 784 F.2d 752 (6th Cir.1986), it shows nonetheless that Gallo Nero was at least cognizant of the potentially infringing nature of its use of the "Gallo" name.[4]

### 8. Conclusion.

Balancing the foregoing factors, the Court concludes that Gallo has established as a matter of law that it is entitled to summary judgment on its trademark infringement claim. Clearly the "Gallo" mark is a mighty fortress in the U.S. wine market, and use of that name on a bottle of competing wine marketed through similar channels leads to an initial finding of infringement. Compounded with defendant's knowledge that its use of the term "Gallo" in any combination would be deemed an infringement by Gallo—if not, in fact, by a federal district court—and some evidence showing a likelihood of confusion, the foregoing is sufficient to find that defendant's use of the term "Gallo" in conjunction with the promotion and sale of its wines in the United States would lead to a likelihood of consumer confusion with Gallo's products.

---

**4.** Gallo Nero also claims that, based on the superior quality of its wines, defendant clearly would not wish to be associated with plaintiff's economy-priced vintages. *See* Reply Memorandum in Support of Defendant's Cross–Motion for Summary Judgment 15:23–26 ("[I]t can be presumed that the Consorzio will take pains to avoid and/or dispel *any possibility* of confusion with the Winery and its products."). However, beyond the logical conclusion that Gallo Nero, for its own benefit, should adopt a different name, the burden is on the defendant as a "new" entrant to the U.S. market under the name of Gallo Nero to find a non-infringing mark. *Citibank, N.A. v. City Bank of San Francisco,* 206 U.S.P.Q. 997, 1009 (N.D.Cal.1980) ("One who adopts the mark of another for similar good[s] acts at his own peril and any doubt concerning the similarity of the mark must be resolved against him.").

Therefore Gallo is entitled to summary judgment on its infringement claim.

### 9. Other considerations.

#### *(a). Mootness.*

■ Gallo Nero's opposition is based in large part on its contention that since it has voluntarily discontinued all use of the "Gallo" term as of earlier this month, plaintiff's motion is effectively moot. However, as the Ninth Circuit has noted,

> a trademark plaintiff 'entitled to relief, is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved ... against the [defendant]'.... If the defendants sincerely intend not to infringe, the injunction harms them little; if they do, it gives [plaintiff] substantial protection of its trademark.

*Polo Fashions, Inc. v. Dick Bruhn, Inc.*, 793 F.2d 1132, 1135–36 (9th Cir.1986) (quoting *William R. Warner & Co. v. Eli Lilly & Co.*, 265 U.S. 526, 532, 44 S.Ct. 615, 618, 68 L.Ed. 1161 (1924)).

In the present case, Gallo Nero's past conduct does not reasonably ensure continued adherence to its present position. Gallo Nero commenced its 1989 U.S. marketing campaign after having received notice that use of the "Gallo Nero" term would be deemed an infringement by Gallo. Moreover, throughout the present action and its own cross-motion for summary judgment, Gallo Nero has continued to maintain that it may legitimately use the "Gallo Nero" mark within certain guidelines which await this Court's approval. In light of the foregoing, the Court finds that Gallo Nero's continued non-use of the "Gallo Nero" name is not assured, and therefore injunctive relief is warranted. Moreover, even if the Court does Gallo Nero a disservice in reaching this conclusion, issuance of the injunction will not likewise do Gallo Nero any harm.

Therefore the present motion is not rendered moot by Gallo Nero's voluntary discontinued use of the "Gallo Nero" mark.

#### *(b). Laches.*

■ Gallo Nero contends that Gallo has permitted the continued use of the "Gallo Nero" name in connection with the U.S. retail wine trade for more than a decade, and that Gallo knew of and acquiesced to such use. Therefore Gallo Nero contends that Gallo's "unreasonable delay" in bringing the present action provides Gallo Nero with a laches defense to Gallo's present attempt to enforce its trademark rights. Specifically, Gallo Nero contends that the continued display since 1980 of its wines and a large poster bearing the term "gallo nero" in a single liquor store in downtown Washington D.C., the Mayflower Wine & Spirits Shop, creates a laches defense to the present infringement claims because Gallo has never protested such use, even though it sold its wines through that same store.

■ A critical element of a laches defense in an action for trademark infringement is establishing the junior user's detrimental reliance on the senior user's delay in enforcing its rights to the mark. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 831, 833 (9th Cir.1991). In the present case, Gallo was prompt in notifying both Gallo Nero and its predecessor, CVCC, following commencement of the respective U.S. marketing campaigns that any use of the term "Gallo" in relation to defendant's wines in the United States constituted infringement of plaintiff's marks. More significantly, the display in the Mayflower Shop itself had been constructed without Gallo Nero's knowledge, *see* Lanzoni Depo. 242:4–22, thereby precluding a finding of detrimental reliance in defendant's favor.[5] *Id.* at 833.

---

5. Gallo Nero argues that while its director, Dr. Lanzoni, was unaware of the display at the Mayflower Shop, "members of the Consorzio Vino Chianti Classico were aware of that use in 1980." Reply Memorandum in Support of Defendant's Cross–Motion for Summary Judgment 5:17–18. However, in support of this statement, Gallo Nero relies on the declaration of Sidney Moore, owner of the Mayflower Shop, which merely states as follows: .

> My father is the only American member of the technical tasting committee of the Consorzio Chianti Classico Gallo Nero. The signs displayed in my store ... are from the Consorzio Chianti Classico Gallo Nero and were sent to me back in 1980.

In conclusion, then, the Court finds that a single instance of a continuous display in a lone U.S. liquor store does not constitute a defense to Gallo's infringement claims, especially where, as here, such display was constructed and maintained without the defendant's knowledge. Therefore Gallo Nero's laches defense is without merit. Moreover, as it does not raise a genuine issue of material fact, it does not preclude the granting of summary judgment in Gallo's favor.[6]

*B. Gallo's dilution claim.*

■ Gallo claims dilution of its "Gallo" mark under California Business and Professional Code section 14330. Under California law, a plaintiff is not required to show either a likelihood of confusion or actual injury in order to succeed on a dilution claim. *Century 21*, 846 F.2d at 1180; *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1362 (9th Cir.1985). Instead, a plaintiff need show a likelihood "of dilution of the distinctive quality of a mark." Cal. Bus. & Prof'l Code § 14330 (West 1984). Thus Gallo need show only that "the distinctive value of the ['Gallo'] mark is *likely* to be diluted." *Academy of Motion Picture Arts and Sciences v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1457 (9th Cir.1991) (emphasis in original). Moreover, while "tarnishment" is required in showing a "likelihood of injury to business reputation" under the first prong of section 14300, the second prong "is directed at protecting an owner's right to strong, well recognized marks." *McDonald's Corp. v. Arche Technologies, Inc.*, 17 U.S.P.Q.2d 1557, 1560 (N.D.Cal.1990).

■ While Gallo Nero is correct in noting that anti-dilution statutes extend protection to strong marks against uses of the mark in non-competing goods, *i.e.*, situations where there is no likelihood of confusion nor finding of trademark infringement under the Lanham Act, *see* 2 J. McCarthy, *Trademarks and Unfair Competition* § 24:13, at 213 (1984), the fact that the goods or services are competing does not foreclose a finding of dilution. *See, e.g., id.* § 24:13, at 214–15 ("In several cases, where traditional likelihood of confusion of sponsorship is found, the court will also find, almost as an after thought, that there has been dilution. This seems to be a harmless redundancy...."); *Century 21*, 846 F.2d at 1180. Instead, the true injury sought to be prevented is the "risk of erosion of the public's identification of [the] very strong mark with plaintiff alone, thus diminishing its distinctiveness." *Tiffany & Co. v. Boston Club, Inc.*, 231 F.Supp. 836, 844 (D.C.Mass.1964).

■ As discussed above, plaintiff has established the virtually unparalleled strength of the "Gallo" mark in the context of U.S. wines. Moreover, the Court finds that defendant's use of the name "Gallo" in connection with its wines constitutes dilution of plaintiff's mark within the meaning of section 14330 as such use is likely to detract from the distinctiveness of the "Gallo" mark in that market.[7] Therefore

Reply Declaration of Sidney Moore ¶ 2 (executed July 29, 1991).

This showing hardly establishes an intentional connection between Gallo Nero and the single display such that detrimental reliance for purposes of nationwide marketing of wine can be inferred, much less presumed or found. Instead, the fact that the head of Gallo Nero was unaware of the display—as well as the rather roundabout circumstances whereby the signs were obtained—is sufficient for this Court to find that Gallo Nero did not intend that such display be constructed, much less that it might be found to have detrimentally relied on the display's continued existence.

6. Gallo Nero effectively contends that this defense is further supported by "the parties' long coexistence without confusion" in the wine mar-

ketplace. *See* Reply Memorandum in Support of Defendant's Cross–Motion for Summary Judgment 2:21–22. However, as noted previously, no bottles of "Chianti Classico" bearing the words "Gallo Nero" have yet been sold in the United States. Thus even though consumers have for years "looked for the Gallo Nero," these customers were effectively looking only for the symbol of the black rooster rather than any words to that effect. Thus such "continued use" based on reference to the *symbol* does not establish detrimental reliance on the ability to use the *word* "Gallo."

7. Indeed, under Gallo Nero's arguments that the parties' respective wines are distinct on the basis of price and quality, one could argue that defendant's use of "Gallo" in relation to its high-

the Court finds that Gallo is entitled to summary judgment on its dilution claim as well.

### C. Gallo Nero's request for declaratory relief.

Gallo Nero requests a declaration by this Court that its use of the term "Gallo" in its full name and in conjunction with other distinguishing terms does not constitute infringement or dilution of the "Gallo" mark.

 For the reasons stated above, and given the established strength of the "Gallo" mark in the field of wine, the Court finds that any use of the term "Gallo" in conjunction with any wine marketed in the United States would constitute infringement of plaintiff's marks. Instead, the Court finds that regardless of the print size or number of words involved, there is a likelihood that a consumer will assume some connection with plaintiff when encountering the word "Gallo" in conjunction with wine. For such reasons, Gallo Nero's motion for summary judgment on its counterclaim for declaratory relief is denied.

### D. Cross-motion for expenses.

On July 24, 1991, Gallo filed a cross-motion for expenses against Gallo Nero pursuant to Federal Rule of Civil Procedure 56(g), and against counsel for Gallo Nero pursuant to 28 U.S.C. § 1927. The Court examines each of these arguments in turn.

1. Motion against a party under Rule 56(g).

 Under Rule 56(g), where affidavits submitted in relation to a Rule 56 motion are made

in bad faith or solely for the purpose of delay, the Court shall forthwith order the party employing them to pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused the other party to incur, including reasonable attorney's fees, and any offending party or attorney may be adjudged guilty of contempt.

Fed.R.Civ.P. 56(g) (emphasis added). Affidavits filed pursuant to Rule 56(f) fall within the scope of Rule 56(g). 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2742, at 562–63 (2d ed. 1983).

Gallo contends that Gallo Nero's Rule 56(f) motion delaying Gallo's original summary judgment motion for some four months was made in bad faith because: (1) Gallo Nero failed to take any of the six depositions deemed so critical to its opposition to the motion; and (2) Gallo Nero's extensive opposition to the present motion failed to include a single document produced by Gallo following several expensive and time-consuming discovery bouts and motions.

This Court, however, is not persuaded that Gallo Nero's Rule 56(f) motion was taken in bad faith or with an intent to delay the proceedings such that an award of expenses is warranted. At the time of Gallo's original motion, it was known that Gallo Nero planned to pursue a motion to compel discovery before the Magistrate Judge, and that Gallo Nero further intended to pursue appropriate additional discovery based on the results of that motion. The motion to compel was made and heard in a timely manner, and the decision on that motion—which was in fact granted in part for Gallo Nero—was not issued until late April. Moreover, the Rule 56(f) motion was granted by this Court based in part on Gallo Nero's need to complete the Jacoby Survey, which again was completed and extensively utilized in the present motions. Finally, the decision not to pursue certain depositions or to submit any Gallo-produced documents was a logical consequence of Gallo Nero's decision to voluntarily discontinue any and all uses of the "Gallo" term in the United States. While that decision does not, as Gallo Nero contends, render Gallo's motion moot or significantly narrow the scope of the present motions, the decision to discontinue such use would seem to

---

er-priced wines would detract from the general perception of plaintiff's wines as being economically priced vintages, thus detracting from the perception of the "Gallo" mark as representing lower quality at a lower cost.

argue against the needless taking of depositions.

Therefore, the Court finds that neither Gallo Nero's Rule 56(f) motion nor the affidavits in filed in support thereof were made in bad faith or solely to delay the proceedings such that expenses are warranted under Rule 56(g).

2. Motion against counsel under section 1927.

Gallo also moves for expenses against counsel for Gallo Nero pursuant to 28 U.S.C. section 1927. Under section 1927,

> [a]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case *unreasonably and vexatiously* may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of said conduct.

28 U.S.C. § 1927 (emphasis added). Thus this Court may award sanctions under section 1927 only where it finds that counsel acted "recklessly or in bad faith." *Barnd v. City of Tacoma*, 664 F.2d 1339, 1343 (9th Cir.1982).

■■ Gallo contends that it is entitled to expenses against defense counsel based on the same reasons as above, *i.e.*, attestations of a need for "critical" and "essential" discovery never taken or utilized in Gallo Nero's opposition. In addition, Gallo contends that it is entitled to all expenses incurred to date in light of the fact that Gallo Nero in late June proposed a settlement along terms identical to one proposed by Gallo ten months prior.

■■ The Court has already found that expenses are not warranted in relation to Gallo Nero's alleged abuse of its Rule 56(f) motion. Moreover, this Court is unwilling to hold that finally acceding to the most favorable terms offered by plaintiff some ten months after—during which time escalating settlement offers were presumably made—is so "vexatious" to warrant an award of expenses for the bulk of the action as such conduct seems more commonplace than dilatory. More importantly, although Gallo Nero belatedly "came around" in June 1991 and offered those original terms of settlement proposed in August 1990, Gallo rejected that offer, thereby necessitating the extensive expense of briefing and arguing the present motion rather than resolving the action at that time. Therefore at least a portion of those expenses would seem to be attributed to Gallo's own delay in settling the case.

Thus the Court denies Gallo's motion under section 1927 as counsel's conduct did not approach the level of recklessness or bad faith warranting imposition of sanctions, particularly where, as here, settlement of the action was arguably further delated by the movant's own conduct.

## IV. CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1. Plaintiff Gallo's motion for summary judgment on its trademark and dilution claims is GRANTED. The Court hereby enjoins defendant's use of the word "Gallo" in conjunction with the promotion and sale of its wines in the United States. However, this ruling in no way affects defendant's continued use of the black rooster symbol in connection with its wines.

2. Defendant Gallo Nero's cross-motion for summary judgment on its claim for declaratory relief is DENIED.

3. Plaintiff Gallo's cross-motion for expenses pursuant to Federal Rule of Civil Procedure 56(g) and 28 U.S.C. § 1927 is DENIED.

4. Gallo is hereby directed to submit a proposed form of judgment to this Court within fifteen (15) days of the filing of this Order, having first provided opposing counsel with a copy of the proposed judgment. Opposing counsel may file any comment on the proposed form of judgment within twenty-five (25) days of the filing of this Order.

IT IS SO ORDERED.